A00A2006. MILLSAP v. THE STATE.
(544 SE2d 530)

PHIPPS, Judge.

A Gordon County jury found Daniel Lee Millsap guilty of three counts of child molestation and one count of aggravated child molestation. Millsap claims that the evidence was insufficient to support the verdict. We disagree and affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[1]

Under *Jackson v. Virginia*,[2] we determine if any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

Viewed in the light most favorable to the verdict, the evidence shows that Millsap, who was then 35 years old, lived with his mother

---

[1] *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).
[2] Supra.

and older brother. Millsap's niece, ten-year-old R. R., lived nearby on the same street with her mother, stepfather and younger sister. R. R. enjoyed spending time with her grandmother (Millsap's mother), and she and her sister spent occasional weekend nights at her house.

R. R. testified about several incidents that occurred when she spent the night at her grandmother's house. She said that Millsap touched her "private part" with his hands and with his "private part" while they were in his bedroom. She testified that Millsap put his mouth on her "private part" when they were in the laundry room. She also testified that Millsap made her put her hand on his "private part" in his room, her grandmother's room and the laundry room. She said that Millsap had told her not to tell anyone what had happened. R. R. testified that the last time she went to her grandmother's house, before the incidents were reported to the police, Millsap had tried to get her to go to his room and get on top of him, but she had refused. R. R. said that all of the incidents took place at night when her sister and grandmother were asleep. She said that she did not know if her other uncle was home at the time because he always kept his bedroom door shut.

R. R.'s mother testified that in May 1999, R. R. told her that Millsap had "tried to touch her and mess with her" while she was spending the night at her grandmother's house. At R. R.'s insistence, her mother promised not to tell anyone about it. Near the end of that school year, R. R. again asked to spend the night with her grandmother. When R. R. returned home, she was upset and crying. She told her mother that Millsap had tried to touch her again and that she had not been able to sleep well that night. At that point, R. R.'s mother confronted Millsap and told her husband about what had happened. Her husband called the police.

Gordon County Patrol Sergeant Grady Jolly responded to the call and obtained a report of alleged molestation involving Millsap and R. R., which he forwarded to Gordon County Chief Detective Michael Garigan. In accordance with established protocol, Garigan contacted the Department of Family & Children Services (DFACS). Garigan first conducted a brief informal interview with R. R. at the sheriff's office. He and DFACS investigator Deanna Campbell next conducted a formal, taped interview of R. R. at the DFACS office. (The taped interview was played for the jury at trial.)

Garigan then obtained a warrant for Millsap's arrest. After Millsap was arrested and informed of his *Miranda* rights, Detectives Garigan and Kyle Burkett interviewed him at the jail. The interview was taped and was played for the jury at trial.

During the interview, Millsap initially said that he had never touched R. R. except to hug her neck and that he had been out all night the last night R. R. spent at her grandmother's house. At that

point, the detectives turned off the tape and concluded the interview. Millsap then asked them if they believed him and they said they did not. Millsap began crying and said that he wanted to tell what had really happened. The taped interview resumed, and Millsap said that R. R. had asked him if she could play with his penis and when he said "no," she unbuttoned and unzipped his pants, pulled his penis out and started playing with it. When Millsap realized what she was doing, he made her stop. At that point in the interview, the tape was turned off again. But Millsap began crying again, told the detectives that he had not told the whole story and asked if they could help him. They told him that they just needed the truth. The tape was restarted, and Millsap said that R. R. had come to his bedroom and asked him a second time if she could play with his penis. He let her do so until he ejaculated.

The indictment charged Millsap with four separate violations of Georgia's child molestation statute.[3] The alleged acts included: placing his mouth against R. R.'s vaginal area,[4] having R. R. place her hand on his penis, placing his hand against R. R.'s vaginal area and placing his penis against R. R.'s vaginal area.

At trial, Millsap initially testified that he did not remember giving a statement to Garigan and that he had never touched R. R. inappropriately. On cross-examination, Millsap admitted that he remembered meeting Garigan once before trial and going into a room with him so that he could tell his side of the story.

After his conviction, Millsap filed a motion for new trial on the grounds that the verdict was contrary to the law and the evidence. The trial court denied the motion.

Millsap contends that no rational trier of fact could have found him guilty of the offenses as charged. Based on the fact that R. R.'s mother continued to allow R. R. and her younger sister to visit their grandmother, he claims that R. R.'s mother did not believe R. R.'s initial allegations against him. He also relies on his testimony that he had no specific recollection of the interview with Garigan and the fact that, during his trial testimony, he never admitted any of the conduct alleged in the indictment or testified to by R. R. at trial.

Even if we accept Millsap's arguments, they would not preclude the possibility that any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. "Taking the victim's testimony as true, as we must, it alone was clearly sufficient to authorize [Millsap's] conviction of the offenses as charged under the standard set forth in *Jackson v. Virginia.*"[5]

---

[3] OCGA § 16-6-4.

[4] Under OCGA § 16-6-4 (c), this act constitutes aggravated child molestation.

[5] (Citation and punctuation omitted.) *Cantrell v. State*, 231 Ga. App. 629, 630 (500 SE2d 386) (1998).

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED JANUARY 22, 2001.

*William R. Thompson, Jr.,* for appellant.
*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney,* for appellee.

